IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

Re:   Terry Larue Wyatt, Debtor                              Case No. 4:12-bk-15605T
                                                                          Chapter 7


M. Randy Rice, Trustee                                                    Plaintiff


v.                                               AP No.


Terry Larue Wyatt                                                         Defendants


### COMPLAINT OBJECTING TO THE DISCHARGE OF THE DEBTOR

Comes now the plaintiff, M. Randy Rice, chapter 7 trustee of the above estate (hereafter referred to as "Trustee"), and for his Complaint to object to the discharge of the debtor, Terry Larue Wyatt (hereafter referred to as the "Debtor"), states and alleges as follows:

### JURISDICTION AND PARTIES

1.   On September 26, 2012, the Debtor filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Eastern District of Arkansas. Plaintiff was subsequently appointed the chapter 7 trustee of the above estate.

2.   This matter constitutes an Adversary Proceeding pursuant to 28 U.S.C. § 157(b)(2) and Rules 7001(1) and (4) of the Federal Rules of Bankruptcy Procedure and is filed pursuant to provisions of the Bankruptcy Code. This Complaint is timely filed pursuant to Rule 4004(b) of the Federal Rules of Bankruptcy Procedure.

3.   This Court has jurisdiction of this matter pursuant to 28 U.S.C.. § 157, 11 U.S.C. § 101 *et seq*, 11 U.S.C. § 542, and 11 U.S.C. § 727. Trustee further states that this is a core

proceeding.

4. The Debtor is a resident of Faulkner County, Arkansas. The Debtor is a defendant in a related adversary proceeding associated with this case filed by the Trustee on October 22, 2013 (Rice v. Wyatt, *et al*, Case No. AP 13-1128). The related adversary proceeding is pending and a trial is currently set for July 23, 2014.

5. Trustee objects to the Debtor's discharge pursuant to the provisions of 11 U. S. C. § 727. Specifically, the Trustee states that grounds exist to deny the Debtor's discharge pursuant to 11 U. S. C. § 727(a)(2), (3), (4), (5) and (6). Plaintiff states that:

(a) The debtor, with intent to hinder, delay and defraud creditors and the estate, transferred and concealed property within one year before the date of the filing of the petition and continued to do so after the date of filing of the petition.

(b) The debtor has concealed, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained.

(©) The debtor knowingly and fraudulently, in or in connection with the case made a false oath or account.

(d) The debtor knowingly withheld from the plaintiff recorded information, including books, documents, records, and papers, relating to the debtor's property and financial affairs.

(e) The debtor has failed to explain satisfactorily the loss of assets or deficiency of assets to meet the debtor's liabilities.

(f) The debtor has refused to obey the lawful order of this Court.

## FACTS

6. At the commencement of this bankruptcy proceeding, the Debtor scheduled ownership interests in different companies and corporations. Attached and labeled as "Exhibit 1" is a file marked copy of Schedule B of the bankruptcy petition filed by the Debtor on September 26,

2012.  The Debtor claimed ownership interests in several entities on Schedule B of his bankruptcy petition, including, the following:

| Description | Value |
|---|---|
| A-1 Recovery, Inc. | $    0.00 |
| A-1 Recovery Towing & Recovery, Inc. | |
| Triskole Excavating, Inc. | |
| A-1 Recovery Rental, LLC | 2,347.00 |

7. The debtor formed A-1 Recovery, Inc., (hereafter referred to as "Holding Company" on February 4, 1992.  The Debtor owned one-hundred percent (100%) of its outstanding shares at all times relevant to the facts alleged in this Complaint.  Attached and labeled as "Exhibit 2" is a copy of the Articles of Incorporation of the Holding Company certified by the Arkansas Secretary of State, and a copy of the relevant portion (Schedule K-1) of a 2009 corporate tax return of the Holding Company stating that The Debtor owned one hundred percent (100%) of the shares of the Holding Company.  The Holding Company was primarily engaged in the business of towing, wrecker and repossession services.

8. The debtor formed A-1 Recovery Towing and Recovery, Inc. (hereafter referred to as "Recovery Towing") on or about April 27, 2001.  Attached and labeled as "Exhibit 3" are the Articles of Incorporation of Recovery Towing.  The Debtor acquired one hundred percent (100%) of the outstanding shares of Recovery Towing on or about May 1, 2001. He has continuously served as the President of Recovery Towing since that date.   Attached and labeled as "Exhibit 4" is an informational statement generated by the Arkansas Secretary of State listing the Debtor as President.

9.     Triskole Escavating, Inc. (hereafter referred to as "Triskole") was incorporated on September 3, 2008. The Debtor owns one percent (1%) of the outstanding shares of Triskole. Attached and labeled as "Exhibit 5" is a copy of a statement from the Arkansas Secretary of State confirming the filing of the Articles of Incorporation. Also attached and labeled as "Exhibit 6" is a copy the relevant portion (Schedule K-1) of a 2011 corporate tax return of Triskole stating that The Debtor owned one percent (1.0%) of the shares of Triskole during the 2011 tax year.

10.    A-1 Recovery Rental LLC (hereafter referred to as "Rental LLC") was formed by the Debtor on April 24, 2009. Debtor's Holding Company was the sole owning member of Rental LLC as of the date of its formation. Attached and labeled as "Exhibit 7" is a statement prepared by the Arkansas Secretary of State confirming the filing of the Articles of Organization of Rental LLC. The Articles of Organization state that Rental LLC was formed by the Holding Company and the Holding Company was the sole and managing member of Rental LLC at that time. Rental LLC is primarily engaged in the owning, managing and disposition of rental properties.

11.    Although the Debtor, the Holding Company, Recovery Towing, Triskole and Rental LLC are filed separate legal entities in accordance with the laws of the State of Arkansas, the assets, interests and liabilities of these entities have been intermingled with respect to one another in a manner inconsistent with their legal status. The Trustee further states that the Debtor has used all of these entities to conceal assets from his creditors, and has expended income and assets of the corporate entities for his own benefit to the detriment of his creditors. The actions of the Debtor are set forth with particularity in the following paragraphs.

**TRANSFER OF REAL PROPERTIES FOR PURPOSE OF CONCEALMENT**

12.    On or about May 12, 2009, the Debtor and his spouse, Lorene Wyatt, transferred their undivided interest in nineteen (19) parcels of real property to Rental LLC. One of these parcels of real property, located at 56 Wyatt Lane, Vilonia, Arkansas, was the marital residence of The Debtor and Lorene Wyatt at that time.

4

13. The real property located at 56 Wyatt Lane and the eighteen (18) parcels of real property owned by Rental LLC were of substantial value. According to a personal financial statement for the years ending December 31, 2008, and December 31, 2009, prepared for and signed by the Debtor and Lorene Wyatt, the nineteen (19) parcels of real property had an aggregate gross fair market value of $2,993,800.00 against total encumbrances of $754,000.00. Attached and labeled as "Exhibit 8" is a copy of the aforementioned financial statements. The financial statements submitted on December 3, 2009, demonstrate that the Debtor continued to list the interest in these parcels of real property as a personal asset notwithstanding the fact that he allegedly transferred his personal interest in them to Rental LLC in May of 2009. The Debtor provided these financial statements to his creditors when obtaining and renewing personal financing on an ongoing basis.

14. On or about February 23, 2011, the debtor caused Rental LLC to transfer its interest in the real property located at 56 Wyatt Lane to Billy Joe Studebaker (hereafter referred to as "Studebaker") for the sum of $475,000.00. Studebaker was a business partner and/or associate of the Debtor at the time. (Studebaker died on or about March 23, 2013.) Attached and labeled as "Exhibit 9" is a copy of the real estate contract signed by the Debtor and Studebaker. The contract states that the Debtor received $100,000.00 cash, in hand, and the further sum of $130,350.00 was supposed to be paid within six (6) months from the date of the signing of the contract (February 28, 2011). Additionally, the sum of $1,428.76 per month was to be paid each month beginning April 1, 2011 and continuing for 360 consecutive monthly installment. The Debtor has not produced any documentation of receipt of the $100,000.00 that was allegedly paid at the time this real estate contract was signed nor has he produced any documentation to evidence that Studebaker has ever paid the balance owed on the contract. At the time of the signing of the real estate contract, the Debtor was the sole shareholder of the Holding Company and the Holding Company was the sole member of Rental LLC. All of the legal entities were being utilized by the debtor to give appearance

5

that assets had been transferred from the debtor. The further purpose of the debtor was to cause an ongoing concealment of his possession, ownership and control.

15. On August 17, 2011, Lorene Wyatt filed a Complaint for Divorce against the Debtor in the Circuit Court of Faulkner County, Arkansas (Case No. 23DR-2011-1046).

16. On August 23, 2011, just six (6) days after Lorene Wyatt filed her divorce complaint, the real estate contract between the Debtor and Studebaker that is attached as "Exhibit 9" was filed with the Faulkner County Circuit Clerk. Also, on or about August 23, 2011, The Debtor, acting as the sole shareholder of the Holding Company, allegedly sold one-hundred percent (100%) of the Holding Company's membership interest in Rental LLC to Studebaker for the sum of $525,000.00. This sale included all of the assets of Rental LLC except for the right of Rental LLC to collect on the contract to sell real property located at 56 Wyatt Lane. A portion of the purchase price was financed by a promissory note payable to the Holding Company by Studebaker in the amount of $341,559.94. Attached and labeled as "Exhibit 10" is a copy of the Agreement to Transfer Ownership Interest, which cites the terms of the sale, and a copy of the promissory note made by Studebaker to the Holding Company. Attached and labeled as "Exhibit 11" is a copy of a statement from the Arkansas Secretary of State confirming the filing of Amended Articles of Organization to substitute Studebaker as the sole member of Rental LLC. Despite the Trustee's request, the Debtor has produced no proof of any payments from Studebaker.

17. On December 5, 2011, Triskole filed a Complaint against the Holding Company for breach of contract claiming $455,511.45 in damages. On that date, the Debtor was the sole shareholder and President of the Holding Company, and a minority shareholder of Triskole.

18. On December 19, 2011, Lorene Wyatt filed a Complaint to set aside fraudulent conveyances against The Debtor, Studebaker, the Holding Company, Rental LLC, *et al* in the Circuit Court of Faulkner County, Arkansas (Case No. 23CV-11-1219).

19. On March 1, 2013, the Debtor, acting in his capacity as President and sole shareholder, allowed a consent judgment in the amount of $425,490.76 to be entered against the Holding Company in favor of Triskole. The Judgment was satisfied, in primary part, by an assignment of the promissory note payable to the Holding Company by Studebaker for the purchase of Rental LLC (see attached "Exhibit 10"). The balance of the judgment was satisfied by transferring all or substantially all of the remaining unencumbered assets of the Holding Company, namely equipment and other personal property to Triskole. Attached and labeled as "Exhibit 12" is a copy of the Judgment.

20. On March 7, 2012, Arvest Bank filed a Complaint for Foreclosure against the Holding Company and against the Debtor and Lorene Wyatt in Pulaski County Circuit Court (Case No. 60CV2012-648). The suit was commenced to collect on a defaulted promissory note made by the Holding Company on which the Debtor and Lorene Wyatt were personal guarantors.

21. On March 14, 2012, Studebaker purchased ninety-nine percent (99%) of the outstanding shares of Triskole. The Debtor retained his one percent (1%) ownership interest in Triskole.

**ONGOING CONCEALMENT OF INTEREST AND FRAUDULENT TRANSFER**

22. The Debtor transferred or concealed, or permitted to be transferred or concealed, property of the Debtor within one (1) year before the filing of his petition with the intent to hinder, delay or defraud.

23. As stated in paragraph number nineteen (19), the Debtor caused or permitted a consent judgment to be entered against the Holding Company in favor of Triskole on March 1, 2012, approximately seven (7) months prior to the petition date, and thirteen (13) days before Studebaker purchased ninety-nine percent (99%) of the outstanding shares. Pursuant to the Judgment, the Holding Company transferred its interest in various assets having a total value of approximately $425,000.00 to Triskole. The Debtor owned one hundred percent (100%) of the outstanding shares

7

of the Holding Company at the time that the Judgment was entered. The Judgment gave the appearance of diminishing the Debtor's shareholder equity in The Holding Company as its sole owner and diminishing the fair market value and marketability of the Debtor's ownership interest in The Holding Company. Triskole was an insider of the Debtor. The Debtor was a partial owner of Triskole as of the date of the entry of the Judgment.

24. The Debtor permitted the entry of the above Judgment with intent to hinder, delay or defraud the creditors of his estate. The Holding Company had substantial debts at the time that the Judgment was entered. The Debtor personally guarantied a substantial amount of the debts of The Holding Company and those personal guaranties are listed on the Debtor's bankruptcy petition and schedules.

25. Centennial Bank and Arvest Bank have filed proofs of claim against this estate in the total amount of $783,586.59 with respect to debts of The Holding Company on which the Debtor was a personal guarantor. Attached and labeled as "Exhibit 13" are file marked copies of the first two (2) pages of said proofs of claim. The Judgment was entered shortly before Arvest filed suit against The Holding Company and the Debtor to collect on a defaulted promissory note made by The Holding Company to Arvest on which the Debtor was a personal guarantor. Furthermore, The Holding Company was the only borrower listed on the above lines of credit. However, the line of credit was commonly used by Triskole, Rental LLC, Recovery Towing, and/or other insiders of the Debtor with the Debtor's knowledge and consent. The Plaintiff asserts that Triskole, Rental LLC, Recovery Towing, and/or other insiders of the Debtor did not satisfactorily repay the amounts owed by them to the Holding Company in connection with said lines of credit. The Debtor, acting in his capacity as the owner and President of The Holding Company, allowed the Consent Judgment to be entered in favor of Triskole notwithstanding this fact.

**FAILURE TO SCHEDULE ASSET AND SECURED DEBT**

26. At the commencement of this bankruptcy proceeding, the Debtor owned an undivided one-half (½) interest in the following described real property:

> Lot 1, Peebles Subdivision, Minor Subdivision, to the City of Camden, Ouachita County, Arkansas.
>
> Also known as 207 HWY 274, Camden, Arkansas.

Attached and labeled as "Exhibit 14" is a file marked copy of the warranty deed vesting the above described real property to the Debtor and his wife, Lorene Wyatt, on or about April 4, 2000. The Debtor concealed and failed to disclose this interest on his bankruptcy petition and schedules and failed to disclose said interest to the Trustee. The debtor also failed to disclose the secured debt owed on the real property. On or about February 13, 2014, the Debtor, without the knowledge or consent of the Trustee, attempted to sell the above described real property for the sum of $150,000.00. Attached and labeled as "Exhibit 15" is a copy of a real estate contract signed by the Debtor, as seller. The Trustee learned of the debtor's interest in the above real property and the debtor's attempt to sell the property only after being notified by the real estate agent listing the property and by the mortgage holder of the property.

### TRANSFER OF INTEREST IN RECOVER TOWING AND FAILURE TO DISCLOSE VALUE

27. The Debtor transferred substantially all of his ownership interest in Recovery Towing within one (1) year of the petition date with the intent to hinder, delay or defraud. The Debtor caused a stock valuation report of Recovery Towing to be generated in or around July, 2012. Attached and labeled as "Exhibit 16" is a copy of the report ("Valuation Report of A-1 Recovery Towing and Recovery, Inc., as of July 31, 2012"). The report stated that Recovery Towing had a fair market value of $199,635.00. The Debtor transferred ninety nine percent (99%) ownership interest in Recovery Towing to Gerald Kennon (hereafter referred to as "Kennon") on September 4, 2012, less than four weeks prior to the petition date. The stated sales price of the transfer was $32,720.73 (payable over a ten (10) year period). Attached and labeled as "Exhibit 17" is a copy of the Stock Purchase Agreement. Kennon was an employee of Recover Towing at the time of the transfer.

9

28. As stated above, the evaluation report prepared in July, 2012, estimated the fair market value of one hundred percent (100%) of the shareholder equity of Recovery Towing to be $199,635.00. The Debtor has testified that he transferred Recovery Towing to Kennon with the intent to prevent the Trustee from liquidating or otherwise administering the Debtor's interest in Recovery Towing. Attached and labeled as "Exhibit 18" is the relevant excerpt from a deposition of the Debtor conducted on March 8, 2013, by Arvest Bank. The Trustee has collected $6,941.00 of the Recovery Towing receivable thus far during the administration of this estate.

29. The Debtor did not disclose the transfers of his ownership interests in Recovery Towing in the Statement of Financial Affairs (SOFA) filed with his bankruptcy petition. Attached and labeled as "Exhibit 19" is a file marked copy of page four (4) of the Debtor's Statement of Financial Affairs.

30. The Debtor also knowingly undervalued his interest in Recovery Towing on Schedule B of his bankruptcy petition. The Debtor listed the value of his interest in Recovery Towing as $0.00. He did not list the receivable from Kennon to him. His interest was worth at least as much, if not more, than $32,720.73, the amount the Debtor was entitled to collect as a receivable for the sale of this ownership interest to Kennon.

31. The Debtor has maintained control over the management and operation of Recovery Towing at all times. The Debtor retained his positions as the President and Controller of Recovery Towing after September 4, 2012. The Debtor directs the day-to-day management and operation of Recovery Towing, and is still listed as a signatory on all of its financial accounts.

32. On November 7, 2012, a bank account was opened in the name of Recovery Towing at US Bank (Account No. x-xxx-xxxx-1893). The authorized signatories on the Recovery Towing account at US Bank are the Debtor and Kennon. The Trustee obtained copies of bank statements on the account covering November 7, 2012, through January 31, 2014. A review of the charges to this account demonstrates that approximately $74,000.00 has been debited from the account for primarily consumer expenses and purchases. The Trustee further states that cash withdrawals totaling more than $122,000.00 have been made on this account. Attached and labeled as "Exhibit

20" is a copy of the bank statements on the Recovery Towing account located at US Bank (Account No. x-xxx-xxxx-1893).

33. The Debtor failed to disclose the existence of the above account to the Trustee prior to being sued in the related adversary proceeding. On August 5, 2013, the Trustee requested that the Debtor disclose all bank accounts in his name or where he is or was a signatory from January 1, 2009, through December 31, 2012. Attached and labeled as "Exhibit 21" is a copy of the letter communicating this request. However, the Debtor did not disclose this information to the Trustee.

### THE DEBTOR HAS CONCEALED, DESTROYED OR OTHERWISE FAILED TO ADEQUATELY RETAIN AND/OR PRESERVE RECORDS

34. The Debtor has concealed, destroyed, or otherwise failed to adequately preserve records from which his financial affairs and transactions might be ascertained and has knowingly and fraudulently withheld said records from the Trustee. The trustee has requested **file marked copies** of the tax returns, schedules and reports described herein in order to ascertain the Debtor's pre and post petition financial affairs and transactions. However, as stated above, the Debtor has failed to produce these records, and has offered no excuse or justification for his actions. Furthermore, the Trustee asserts that the Debtor is knowingly and fraudulently withholding these records for the purpose of preventing the Trustee from discovering and liquidating property and/or pursuing further actions against the Debtor and others. Debtor has not provided copies of any deposit slips or cancelled checks despite being served with a subpoena requesting copies of these documents. Debtor's refusal to comply with the Trustee's request has caused the Trustee to have to subpoena records from banking institutions at substantial expense.

35. Prior to the commencement of this case, the Debtor submitted false and misleading personal financial statements to Arvest Bank and Centennial Bank in connection with obtaining and renewing loans and financing. The personal financial statements consistently overstated the value of the Debtor's assets and understated the amount of the Debtor's liabilities. The personal financial

statement dated December 31, 2009, listed the Debtor as having substantial equity interest in various parcels of real property. However, now the Debtor asserts that he did not own these parcels of real property at the time that he submitted the personal financing statements.

36. The personal financial statement dated August 30, 2011, listed the Debtor as having total assets of $900,276.00 and total liabilities of $273,122.00. Attached and labeled as "Exhibit 22" is a copy of that statement. These financial statement failed to include or account for all liabilities owed by the debtor, including the notes payable to Arvest Bank and Centennial Bank guarantied by the Debtor. As stated above, the amounts of assets and liabilities in the Debtor's name fluctuated substantially between 2008 and 2012. The Debtor has failed to satisfactorily explain this apparent devaluation.

## FAILURE TO COMPLY WITH COURT ORDER

37. The Debtor has refused to obey a lawful Order of this Court. On January 21, 2014, this Court entered an Agreed Order compelling the Debtor to turnover the documents and records described therein to the Trustee within thirty (30) days of date of the Agreed Order. Attached and labeled as "Exhibit 23" is a copy of the Agreed Order. The Agreed Order specifically compelled the Debtor to turnover **file marked copies** of tax returns. As of the date herein, the Debtor has only produced a **file marked copy** of his Federal tax returns for the 2011 and 2012 calendar years. Even then, the Debtor did not provide a complete copy of the tax returns and supporting documents. The Agreed Order also compelled the Debtor to turnover a schedule listing the current assets of Recovery Towing. As of the date herein, the Debtor has failed to provide this schedule. Finally, the Agreed Order compelled the Debtor to turnover receivable and payable reports for the 2013 calendar year of Rental LLC, Recovery Towing and Triskole. As of the date herein, the Debtor has failed to provide these reports.

38. The Trustee reserves the right to amend this Complaint in accordance with the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Trustee prays that this Court finds that grounds exist pursuant to 11 U. S. C. § 727 to deny the discharge of the Debtor and enters an Order denying the discharge of the Debtor. The trustee further prays that this Court enters a Judgment against the Debtor in favor of in and amount equal to the damages caused by the Debtor's actions, plus interest, and enters an award for attorney's fees and costs incurred by the estate as a result of said actions.

DATE    May 31, 2014

                                        Respectfully Submitted;

                                        /s/ M. Randy Rice, Trustee
                                        523 S. Louisiana, #300
                                        Little Rock, AR 72201